UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

                                                    Case No: 1-06-41685-dem

WAYNE P. DEMAR,                                       Chapter 7

                Debtor.
----------------------------------------------------------x
CAROLYN SHAEFER,

                                                  Adversary Proceeding

                Plaintiff,                     Case No.: 1-06-01419-dem

      -against-

WAYNE P. DEMAR,

                Defendant.
---------------------------------------------------------x

## DECISION AND ORDER DISMISSING COMPLAINT

Appearances:

Carolyn Shaefer
Plaintiff
7 E. 129th Street, Garden Apartment
New York, New York 10035

Wayne P. Demar
Defendant
372 91st Street, Apartment 1C
Brooklyn, New York 11209

                               DENNIS E. MILTON
                       United States Bankruptcy Judge

        On May 24, 2006, Wayne Demar (the "debtor" or "Demar") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On August 21, 2006, Carolyn Schaefer ("Schaefer" or "plaintiff") filed an adversary proceeding seeking to have her claim against the debtor declared non-dischargeable pursuant to 11 U.S.C. §§523(a)(2), 523(a)(11),

523(a)(19) and 727(a)(6). On April 30, 2007, the plaintiff filed a motion for summary judgment labeled Dispositive Pre-Trial Motion ("Plaintiff's Application"). On May 17, 2007, the debtor filed a Response to Plaintiff's Application. On May 22, 2007, the plaintiff filed a Reply to the debtor's Response. On May 24, 2007, the Court issued an Order directing the plaintiff to show cause why the plaintiff's Complaint should not be dismissed. On June 19, 2007, the plaintiff filed a Response to the Court's Order to Show Cause. Having reviewed this submission along with the Complaint and other pleadings filed in this proceeding, the Court finds that the plaintiff has failed to state a claim and can not prevail on her claims under 11 U.S.C. §§523(a)(2), 523(a)(11), 523(a)(19) or 727(a)(6). Accordingly, the plaintiff's adversary complaint is dismissed.

## JURISDICTION

The Court has jurisdiction over this core proceeding under 28 U.S.C. §§1334(b) and 157(b)(2)(C) and the Eastern District of New York standing order of reference dated August 28, 1986. This Decision and Order constitutes the Court's findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052.

## FACTUAL HISTORY

On May 24, 2003, the debtor and Michael Brown ("Brown") signed a lease agreement to rent Apartments 2 & 3 at 7 East 129th Street, New York, New York (the "Property") from May 28, 2003 to May 31, 2004 (the "Lease Agreement"). Before leasing the premises, at plaintiff's request the debtor completed a lease application (the "Lease Application"). On the Lease Application, the debtor stated that he was the President of DM Fashion Group Inc. with an annual income of $78,000.

In April 2004, the debtor and Brown stopped paying rent. Between June 24, 2004 and February 26, 2005, the debtor communicated to the plaintiff via electronic mail. The emails attached to the Complaint and Plaintiff's Response to the Order to Show Cause reflected that the parties initially had a congenial relationship. In the earlier dated emails, the debtor apologized for not being more involved in the block association, invited the plaintiff to dinner, discussed ways to help the plaintiff with a community gardening plot and thanked the plaintiff for attending one of the debtor's fashion shows for his business. See Exhibit G to Plaintiff's Response to the Order to Show Cause. The emails also discussed the debtor's plans to recruit private investors which would allow him to expand DM Fashion Group Inc. and increase his cash flow.[1] The debtor expected that once the private offering had closed, he would have access

---

[1] On July 12, 2004, the debtor wrote the following to the plaintiff:

> ...we are diligently preparing the business for the private offering. On Sunday we had a business dinner with potential players and again a meeting this evening. So, things are moving right along and the plan is finally done. We are now preparing our list of people we will send invitations to attend the PPO meeting. On top of that we are planning our next show in S[ep]tember [sic].

Exhibit G to Plaintiff's Response to the Order to Show Cause at 19.

On July 16, 2004, Brown and the debtor wrote the following to the plaintiff:

> ...Happy to report that we have finally completed our business plan and that after two submissions to our business advisors it has been well accepted. The next step is to write up the offer and schedule our actual PPO date... we are shooting for this month's end with a closing by the second week in August.

Id. at 18.

On July 29, 2004, the debtor wrote the following to the plaintiff:

> ...Unfortunately, it's going to be busy for me in the coming couple of weeks for we are almost done with the legalities for our private offering.

Id. at 17.

to the funds from investors and would be able to pay the rental arrears.[2]   When problems arose with this plan, the debtor informed the plaintiff of a new plan to pay the debtor with an approved line of credit.[3]   When this new plan also failed, the debtor notified the plaintiff and kept her informed of other potential solutions.[4]

---

On August 31, 2004, the debtor wrote the following to the plaintiff:

> ...We had to extend the PPM closing date to October 1st. because everyone was on holiday. The good news is that we have more commitments coming in.

Id. at 13.

[2]   On September 19, 2004, the debtor wrote the following to the plaintiff:

> ...We are still set to close our Private offering by 1st October ... after that date - I expect a week or so, we should have full access to the funds we receive from investors.

Exhibit G to Plaintiff's Response to the Order to Show Cause at 12.

On October 8, 2004, the debtor wrote to the plaintiff:

> ...We are trying to move as fast as possible but we have to wait on our accountant - who is working on our pro forma statement, showing the new capitalization.  He promised to expedite and will check with him today to see if he's done... Just a little while longer Ok?

Id. at 10.

[3] On October 12, 2004, the debtor wrote to the plaintiff:

> ...I have made contact with the accountant who has promised to expedite things for us.  However, we do have another complication.  We have just been approved for a line of credit which will keep the business and us going for about 6 months until we start shipping orders. ...We have to use the funds we have on hand to collateralize this line of credit.  We just made this deal on Monday and will work feverishly to close it.  We were told by the end of October. So, I know you are in a dire situation but we are trying to take the necessary steps for us to have funds to run the business and to pay you.

Exhibit G to Plaintiff's Response to the Order to Show Cause at  9.

[4] On November 12, 2004, the debtor wrote to the plaintiff:

> ...Yes we have had some setbacks and it seemed like we were promising

4

In early 2005, plaintiff commenced two Civil Court proceedings against the debtor and Brown. On March 31, 2005, the debtor, Brown and the plaintiff entered into a Stipulation of Settlement whereby the debtor and Brown agreed to pay the plaintiff $46,050.00 in fourteen monthly payments beginning on April 11, 2005. When the debtor and Brown failed to make the payments under the Stipulation of Settlement, the plaintiff sought to evict them. Prior to the scheduled eviction, the debtor and Brown brought an order to show cause to vacate the default judgment that was entered against them. On July 28, 2005, Judge Ruben Martino issued a Decision and Order denying the debtor and Brown's Application to vacate the default judgment and stated that the total amount owed to the plaintiff through July 2005 was in excess of $30,000.00. On October 17, 2005, the debtor and Brown were evicted from the Property.

## PROCEDURAL HISTORY

---

you thin air... However, we are diligently working to get ourselves stabilized. Our financier in CA is flying here Monday to help accelerate things and will also be in the meeting with our accountant that day. So, it won't be much longer Carolyn... I am very sorry that you are in this position and that's why I am working feverishly to get some funds to you.

Exhibit G to Plaintiff's Response to the Order to Show Cause at 6.

On February 26, 2005, the debtor wrote to the plaintiff:

...Presently, we are in negotiation with an investor. We have been working for the past 2-3 weeks, preparing a thorough package of funding requirements, for this man to inject enough capital to cover the cost of operating and expanding the business. This of course, includes a $25,000 allocation for you immediately, (once the deal is closed). We would also draw a monthly salary and thereby be able to gully get caught up with past due rent. We are set to meet him coming Wednesday.

Id. at 1.

On May 24, 2006, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On August 21, 2006, Schaefer filed a Complaint, *pro se*, seeking to have her $37,049.26 claim against the debtor (the "defendant") declared non-dischargeable pursuant to 11 U.S.C. §§523 and 727 (the "Complaint"). On September 22, 2006, the debtor filed an Answer to the Complaint.

On December 12, 2006, the Court held a Pre-Trial Conference and on December 14, 2006, the Court issued a Pre-Trial Scheduling Order. On January 10, 2007, the Chapter 7 Trustee filed a Report of No Distribution in the debtor's bankruptcy case. On January 11, 2007 the Court issued an Order discharging the debtor. On March 20, 2007, the defendant filed a Motion to Dismiss the Complaint because it failed to state a cause of action and because the trustee filed a report of no distribution and requested a discharge for the debtor (the "Defendant's Application"). On April 10, 2007, the Court conducted a hearing and denied the Defendant's Application, finding that the defendant's papers failed to set forth grounds warranting dismissal of the case.

On April 10, 2007, the Court requested that plaintiff file a dispositive motion for summary judgment that would show that her evidence established the elements necessary to prove the allegations in the Complaint. On April 30, 2007, the plaintiff filed a motion for summary judgment labeled Dispositive Pre-Trial Motion. On May 17, 2007, the defendant filed a Response to Plaintiff's Application. On May 22, 2007, the plaintiff filed a Reply to the Defendant's Response.

After reviewing these papers, the Court issued an Order directing the plaintiff to show cause why the Court should not issue an Order dismissing the plaintiff's Complaint for

failure to state a claim.[5]  On June 19, 2007, the plaintiff filed a Response to the Court's Order to Show Cause, in which, for the first time, she organized her claims in the Complaint into five separate counts. On July 12, 2007, the Court held a hearing on the plaintiff's summary judgment motion and the Court's Order To Show Cause and reserved decision.

## DISCUSSION

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure provides that Rule 12(b) of the Federal Rules of Civil Procedure, which permits, *inter alia*, motions to dismiss for failure to state a claim on which relief may be granted, applies to adversary proceedings in bankruptcy court. The debtor has argued that, having obtained his discharge, his interests and the Court's interest in the just and prompt determination of disputes combine to yield the result that he be spared the time and expense of defending post-discharge litigation when it appears the litigation has no chance of success.  See In re Brassard, 162 B.R. 375, 378 (Bankr. Me. 1994) (citation omitted).  Since permitting such litigation to proceed here despite its obvious lack of merit conflicts with the fundamental purpose of the Bankruptcy Code of providing a debtor a fresh start, the Court issued the Order to Show Cause directing the plaintiff to show cause why the Court should not issue an Order dismissing the plaintiff's Complaint.  A review of the plaintiff's causes of action follows.

        I.      The Allegations in Plaintiff's First And Second Count

---

[5]  The Court on its own initiative may note the inadequacy of a complaint and dismiss it for failure to state a claim so long as the procedure employed is fair. See 5A Wright & Miller, *Federal Practice and Procedure* §1357 at 301 (Civ.2d 1990); Fredyma v. At&T Network Systems, Inc., 935 F.2d 368 (1st Cir. 1991); Bayron v. Trudeau, 702 F.2d 43,45 (2d Cir.1983).  For this reason, the Court issued an Order to Show Cause to provide plaintiff with notice and an opportunity to submit a written argument in opposition thereto.  The Court will use the general standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings via Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, when deciding whether the Complaint should be dismissed.  The Court has reviewed all the pleadings submitted in this adversary proceeding, along with the Complaint, prior to making its determination.

Fail to State A Claim Under Code Section 523(a)(2)(B)

In the Complaint, the plaintiff sought a determination of non-dischargeability under Section 523(a)(2)(B) of the Bankruptcy Code. In Response to the Court's Order to Show Cause, plaintiff averred in the First Count that in May of 2003 the defendant falsely stated his annual income on the Lease Application. In the Second Count, plaintiff alleged that between June 24, 2004 and February 26, 2005, the defendant made false promises of payment via email to delay his eviction.

In order to have a debt deemed non-dischargeable under Code Section 523(a)(2)(B)[6], a creditor must prove that the debt was obtained using a statement (1) in writing; (2) that was materially false; (3) respecting the debtor's financial condition; (4) on which the creditor to whom the debtor is liable for money reasonably relied; and (5) that the debtor caused to be made or published with intent to deceive.

The debtor does not dispute that the statements were made in writing (element one), involved the debtor's financial condition (element three) and that the plaintiff relied on these statements when deciding to lease the Property to the debtor (element four). The Court therefore will focus its analysis on elements two and five above.

---

[6] Section 523(a)(2)(B) creates exceptions to discharge and provides in pertinent part that

> (a). A discharge ... does not discharge an individual debtor from any debt –
> ...
> (2) for money, property ... for:
> ...property .... , to the extend obtained by–
> (B) use of a statement in writing–
> (i) that is materially false;
> (ii) respecting the debtor's ... financial condition;
> (iii) on which the creditor to whom the debtor is liable for such ...money, property... reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C.§ 523(a)(2)(B).

To establish the second element the plaintiff must allege facts that the written statement was materially false. For a financial statement to qualify as being "materially false," it must be "one which paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of the type that would normally affect the decision to grant credit." In re Boice, 149 BR. 40, 45 (Bankr. S.D.N.Y. 1992). A statement of future financial condition is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions. See 4 Collier on Bankruptcy ¶523.08[1][c] at 523-45.

The fifth element requires the plaintiff to allege facts which establish that the defendant made the statement regarding his financial condition with the "intent to deceive." This element requires a showing that the debtor knew that any professed intent to pay was false and that the debtor nevertheless deliberately obtained property knowing that it was beyond his ability to pay. A court should examine the totality of the circumstances to make an inference as to whether the debtor submitted a financial statement with an intent to deceive. See In re Hambley, 389 B.R. 382, 400 (Bankr. E.D.N.Y. 2005); In re Senty, 42 B.R. 456, 460 (Bankr. S.D.N.Y. 1984).

The facts submitted in both Plaintiff's Response to the Court's Order to Show Cause and in Plaintiff's Application fail to establish either that the debtor made a material misrepresentation or that the debtor had any intent to deceive the plaintiff. In the First Count, plaintiff alleged that the debtor falsely claimed an annual income of $78,000 on his Rental Application submitted in May 2003. In support of this allegation, plaintiff submitted a copy of debtor's Individual Income Tax Return for 2004 which showed that the debtor generated no

9

income for the 2004 calendar year. Plaintiff also submitted copies of debtor's Response to Plaintiff's Application where he stated that when his business started failing in Fall of 2003, he did not receive the full $78,000.00 in income that was allocated to him when he submitted his Rental Application. These facts do not demonstrate that the debtor made a material misrepresentation when he submitted the Rental Application in May 2003.

In the Second Count, plaintiff alleged that the debtor made false statements regarding his business success and false promises of payment of rent. In support of this allegation, plaintiff submitted a series of emails that debtor wrote to her between June 2004 and February 2005. The Court first notes that plaintiff did not provide any proof of what type of leasehold interest the debtor held after the original lease expired in May 2004. Since plaintiff is *pro se* the Court will assume that the parties had agreed on a month-to-month lease, making any rental payments due after the date of an email that contained a material misrepresentation potentially non-dischargeable. However, the emails submitted do not contain statements which contain material misrepresentations. Instead, the emails demonstrate that the debtor was having some financial difficulty; that he hoped to bring in private investors to bring in more capital and fund the expansion of his company; and that once he received funding he would use a small portion of these funds to pay the plaintiff rental arrears that were due. Representations as to future intentions or promises to perform a certain act in the future do not give rise to actionable fraud, unless the defendant had no intent to fulfill the promise at the time it was made. See 4 Collier on Bankruptcy ¶523.08[1][c] at 523-45. This is true especially if intervening events cause the debtor's future actions to deviate from previously expressed intentions. Id. See Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997); In re Kukuk, 225 BR. 778, 786 (10th

Cir. BAP 1998); In re Jackson, 348 BR. 595, 599 (Bankr. M.D. Ga. 2006).

In the instant case, the plaintiff has offered no facts in support of her allegations that the debtor did not intend to pay the plaintiff when he wrote each of the emails.  The subsequent failure of the debtor to pay, without more, is not sufficient to establish that the debtor lacked the intent to pay when the representations were made.  See 4 Collier on Bankruptcy ¶523.08[1][c] at 523-45.  A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic negates any fraudulent intent. Id. Accordingly, the Court finds that the plaintiff has failed to state a cause of action under Section 523(a)(2)(B) and plaintiff's First and Second Counts must be dismissed.

> II.  The Allegations in the Third Count and Fourth Count Fail to Establish A Claim Under Code Sections 523(a)(11) or 523(a)(19)

In the Third and Fourth Counts, Plaintiff alleged that the debt was non-dischargeable pursuant to Sections 523(a)(11) and 523(a)(19) of the Bankruptcy Code.   Section 523(a)(11) states that a debt "provided for in any ... decree entered in any court ... of any State ... arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union" shall not be discharged.   In support of her argument, plaintiff submitted a copy of the Stipulation of Settlement that she, the debtor and Brown executed in March 2005 in which the parties agreed that the debtor would pay the plaintiff $46,050.00.  Plaintiff also submitted a copy of a Decision and Order dated July 28, 2005, in which Judge Martino of the Civil Court of the City of New York, County of New York stated that the debtor failed to follow the Stipulation of Settlement and that the total debt owed for rental arrears was approximately $30,000.00.

These factual allegations do not prove the necessary elements to discharge a debt pursuant to Section 523(a)(11) of the Bankruptcy Code.  The plaintiff has not alleged facts that the debtor fraudulently incurred the debt at issue with respect to a depository institution or that the debtor was a fiduciary of the plaintiff.

Section 523(a)(19) makes a debt nondischargeable if (1) the debt is for the violation of certain federal securities laws, state securities laws or regulations or for "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security" and (2) the debt results from a judgment in a federal or state judicial or administrative proceeding or any settlement agreement.  11 U.S.C. § 523(A)(19).  Plaintiff's factual allegations here also do not establish the necessary elements to discharge a debt pursuant to Section 523(a)(19) of the Bankruptcy Code.  The plaintiff has not alleged facts that show that the debt was for a violation of federal or state securities laws or regulations.   Accordingly, the plaintiff's Third and Fourth Counts must be dismissed.

> III. Plaintiff Has Failed to State A Claim in the Fifth Count That Debtor's Alleged Refusal To Obey A Lawful Order Warrants Denial of a Discharge Under Code Section 727(a)(6)

In the Fifth Count, plaintiff alleged that the debt was non-dischargeable under Section 727(a)(6)(A) because the debtor refused to obey a lawful order of this Court.   The plaintiff claimed that the Court issued a Standing Pre-Trial Conference Order which required the parties to submit a Joint Preliminary Pre-Conference Statement on or before September 29, 2006.  Plaintiff further alleged that she sent a letter dated September 5, 2006 to the debtor asking the debtor to contact her, so that they could jointly prepare the Statement.  On September 27, 2006, when plaintiff did not receive a response, she filed the Statement on her own.

Section 727(a)(6) provides a basis for denial of the discharge if the debtor has refused to obey a lawful order of the Court during the pendency of the case.[7] The denial of the discharge under this section is subject to the discretion of the Court. In re Beeber, 239 B.R. 13, 31 (Bankr. E.D.N.Y. 1999)(citing In re Kokoszka, 479 F.2d 990,997 (2d Cir. 1973) cert. granted sub nom., Kokoszka v. Belford, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), aff'd, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), and reh. denied, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974)).  As the Second Circuit explained in In re Kokoszka:

> [T]he referee must exercise his discretion whether or not to grant a discharge, even when an order has not been followed....The denial of a discharge can work a serious deprivation upon a debtor, and there are many circumstances where a bankrupt's disobedience may have been inadvertent or otherwise excusable. Moreover the denial of a discharge is not the only weapon available to the referee in order to enforce his orders as a recalcitrant petitioner can also be held in contempt[.] This is not to be read, however, as minimizing the seriousness of the debtor's offense in disobeying a lawful order, nor do we suggest that a blatant violation should be condoned.
>
> Therefore, before denying a discharge, the referee should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied.  He should consider such factors as the intent behind the bankrupt's acts- were they willful or was there a justifiable excuse; was there injury to the creditors; and is there some way that a bankrupt could make amends for his conduct.

---

[7] Section 727 of the Bankruptcy Code governs the granting of a discharge.  Section 727(a)(6) provides in pertinent part:

> 727.  Discharge
> (a) The court shall grant the debtor a discharge, unless –
> ...
> (6)the debtor has refused, in the case -
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]...

11 U.S.C. § 727(a)(6).

479 F.2d at 997-98 (internal citations omitted).  It should be noted that the word "refused" is used in Section 727(a)(6)(A), which is different from the word "failed" which is used elsewhere in Section 727(a).  In re Rivera, 338 B.R. 318, 329 (Bankr. N.D. Ohio 2006), aff'd 356 B.R. 786, 2007 FED App. 0001N (B.A.P. 6th Cir. 2007); In re Patrick, 290 B.R. 306, 313 (Bankr. E.D. Mich. 2003).  "As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge." In re Patrick, 290 B.R. at 313 (citing In re Walter, 265 B.R. 753,758 (Bankr. N.D. Ohio 2001).

Here, the plaintiff has not established that there has been any violation of a lawful order of the Court.  According to the docket, the Court did not issue a Standing Pre-Trial Conference Order.  Plaintiff has not established that this Order was mailed out to the parties. Even if she were to have done so, plaintiff has failed to establish that the debtor's alleged failure to comply with the Pre-Trial Conference Order was willful or intentional, and that this alleged failure rose to a level sufficient to warrant denial of a discharge to the debtor.  In any event, the Court finds that any delay resulting from the debtor's alleged conduct was remedied when the Court issued a Pre-Trial Scheduling Order on December 14, 2006.   Accordingly, the plaintiff's §727(a)(6) claim for denial of the debtor's discharge must be dismissed.

## CONCLUSION

For the reasons sets forth above, the Court finds that plaintiff has failed to set forth facts necessary to state a cause of action and can not prevail on her claims under Sections

14

523(a)(2)(B), 523(a)(11), 523(a)(19) or 727(a)(6) of the Bankruptcy Code. Accordingly, plaintiff's Complaint is dismissed.

        IT IS SO ORDERED.

Dated: Brooklyn, New York
       August 13, 2007

                                    s/Dennis E. Milton
                                DENNIS E. MILTON
                                United States Bankruptcy Judge